IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **NUTRASEP, LLC,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. A-05-CA-523 LY** |
| | § | |
| **TOPC TEXAS LLC and THUMB** | § | |
| **OILSEED PRODUCERS' COOPERATIVE,** | § | |
|     **Defendants** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RUSSELL E. GUILLETTE,** | § | |
|     **Third-Party Defendant** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Nutrasep, LLC's Motion for Partial Summary Judgment (Clerk's Docket No. 52); Russell Guillette's Motion for Partial Summary Judgment (Clerk's Docket No. 58); and the Parties related responses and replies. The Court conducted a hearing on the motions on September 13, 2006.

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

Plaintiff Nutrasep, LLC ("Nutrasep") is a Texas company that alleges that it has developed certain "know-how" and technology for degumming crude vegetable oil and manufacturing lecithin,

an emulsifier and food supplement.  Defendant TOPC is a Michigan farmer-owned agricultural cooperative which operates a soybean crushing and oil refinery in Ubly, Michigan.

In August 2003, the parties entered into a "Teaming Agreement"[1] whereby they agreed to form an alliance to develop a non-genetically-modified-organism soy specialty ingredient enterprise. The parties then formed a separate entity, TOPC Texas (wholly owned by TOPC), for the purpose of applying for a grant from the USDA for the joint enterprise.  In October 2003, TOPC Texas submitted its grant application to the USDA.  In December 2003, the USDA awarded TOPC Texas a grant of $249,500.  On February 27, 2004, the parties entered into a Technology Licensing Agreement ("TLA").[2]  Under the Agreement, TOPC was to pay Nutrasep $350,000 in license fees, as well as 20 yearly payments of at least $150,000.  TLA at ¶ 5.1.  As payment for the one-time license fee, Nutrasep accepted a Secured Promissory Note made by TOPC Texas, guaranteed by TOPC, and secured by TOPC's equipment.[3]  On July 22, 2004, the Parties entered into a Manufacturing and Supply Agreement ("MSA") which incorporated the TLA.[4]

Nutrasep claims that per the Agreements, it provided TOPC the technology to produce lecithin and improve the quality of its soybean oil in 2004 and 2005.  Nutrasep contends that the lab tests showed that lecithin and improved soybean oil met industry standards.  Nutrasep installed the last degumming unit operation step in January 2005, and contends that the project was ready for commercialization at the end of January 2005.  Despite this, Nutrasep contends that Defendants failed to report and to produce quantities necessary to commercialize lecithin and generate royalties.

---

[1] Ex. 8 to Nutrasep's MSJ.

[2] Ex. 11 to Nutrasep's MSJ.

[3] Ex. 12 to Nutrasep's MSJ.

[4] Ex. 14 to Nutrasep's MSJ.

Nutrasep contends that Defendants have failed to pay for the technology and know-how they received under the Agreements and that they continue to produce improved soybean oil. Nutrasep contends that Defendants have violated the Agreements by failing to make the requisite payments under the Agreements and for misusing Nutrasep's confidential and proprietary information. Accordingly, Plaintiff filed the instant breach of contract suit in state court in June 2005, which was subsequently removed to federal court on July 7, 2005.

Defendants have filed counterclaims of breach of contract and fraudulent misrepresentation against Plaintiff and Third Party Defendant Russell Guillette. TOPC alleges that Nutrasep's General Manager, Russell Guillette, approached TOPC and convinced it to enter into the above-agreements by making false representations that Nutrasep had invented new and unique technology for extracting high grade lecithin from wet gums. TOPC claims that the only thing Nutrasep provided was standard, off-the-shelf food processing equipment that is readily available from a number of equipment vendors. TOPC also alleges that Guillette further represented to it that TOPC would not have to invest any capital in the new lecithin project and that Nutrasep would be compensated by wet gums and other products contributed by TOPC and by profits from future lecithin sales and the proceeds of a grant from the USDA. TOPC contends that it signed the TLA despite the requirement to pay license fees based on Guillette's promise that it would not have to make any such investments and that such fees would be paid from the grant proceeds, product contributions from TOPC, and profits from the sale of lecithin. TOPC also alleges that Guillette attempted to deceive the USDA by submitting a false request for reimbursement to the USDA. TOPC further alleges that the USDA grant ($249,500) was

deposited into TOPC Texas' checking account which was later transferred into Guillette's savings account.[5]

On July 24, 2006, Nutrasep filed its Third Amended Complaint. Plaintiff's live Complaint alleges breach of contract, trade secret misappropriation, fraud, fraudulent inducement, negligent misrepresentation, violation of Texas Theft Liability Act, conversion, unjust enrichment/constructive trust, and estoppel. Plaintiff seeks damages, punitive damages, a permanent injunction, and attorney's fees. Defendant's Amended Answer asserts counterclaims of breach of contract, fraudulent misrepresentation, and breach of fiduciary duty.

On July 5, 2006, Nutrasep filed the instant Motion for Partial Summary Judgment on its breach of contract claims and Defendants' fraud counterclaims and defenses. Nutrasep argues that the summary judgment evidence demonstrates that it has met each and every element of a cause of action for breach of contract. In addition, Nutrasep contends that Defendants fraud counterclaims fail as a matter of law. Defendants respond that there are material fact issues in this case which preclude summary judgment. Third-Party Defendant Richard Guillette has also filed a Motion for Summary Judgment also on the basis that Defendants' fraud counterclaims fail as a matter of law. The motions became ripe on August 31, 2006, and on September 1, 2006, the Court set a hearing on the motions. That hearing took place on September 13, 2006.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[5]TOPC states that it sued Guillette not only because he made the misrepresentations but also because Nutrasep is little more than an empty shell, with no equipment, employees, or products, and its only business being this lawsuit. *See* Response to Guillette's MSJ at 2.

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)). Applying these standards, the Court turns to the merits of the motion for summary judgment.[6]

---

[6]Nutrasep has objected to some of Defendants' summary judgment evidence. *See* Clerk's Docket No. 65. The Court overrules these objections and finds that Defendants' evidence sufficiently complies with Federal Rule of Civil Procedure 56.

### III.   ANALYSIS

**A.   Nutrasep's Breach of Contract Claim**

As required by the Agreements in this case, Nutrasep claims that it provided Defendants with the "know-how" and technology to produce saleable lecithin and improve the quality of its soybean oil. Despite this performance, Nutrasep alleges that Defendants have violated the Agreements by failing to make the requisite payments under the Agreements and for misusing Nutrasep's confidential and proprietary information. Accordingly, Nutrasep now moves for partial summary judgment on its breach of contract claims against Defendants. It claims that the undisputed evidence demonstrates that the TLA, MSA, Promissory Note and Security Agreement have all been breached.[7]

The elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting damages to the plaintiff. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.– Corpus Christi 2001, no pet.). Nutrasep contends that the summary judgment evidence demonstrates that it performed under the contracts by providing its "know-how" and technology to the Defendants, which enabled the Defendants to produce saleable lecithin for the first time as well as to improve the quality of its oil production. Nutrasep further contends that Defendants breached the agreements by failing to make the necessary payments under the agreements. Finally, Nutrasep

---

[7]All of the breach of contract claims depend upon breach of the TLA. The TLA obligated TOPC Texas to make license payments to Nutrasep. The promissory note reduced the $350,000 initial royalty obligation to a note, and the security agreement secured the note with certain equipment. Further, TOPC guaranteed TOPC Texas' payments due under the TLA and note. Finally, the MSA includes a liquidated damages clause that Nutrasep claims requires TOPC to compensate Nutrasep for all damages as a result of TOPC Texas' default under the TLA. Accordingly, if Defendants have not breached the TLA by non-payment of the amounts due thereunder, they are also not in breach of the other agreements.

avers that it has demonstrated damages by demonstrating that it did not receive the necessary payments under the Agreements.

The TLA recites that Nutrasep "owns certain Technology Rights related to Licensed Subject Matter, which were developed at its facilities in Austin, Texas." Ex. 11 to Nutrasep's MSJ at 1, ¶ A. "Technology Rights" are defined to mean Nutrasep's "rights in technical information, know-how, processes, procedures, compositions, devices, methods, formulas, protocols, techniques, software, drawings, or data created by [Russell Guillette] before the Effective Date relating to the manufacture of lecithin from expeller pressed vegetable oils." *Id.* at ¶ 2.8. The "Licensed Subject Matter" means "inventions and discoveries of [Russell Guillette] considered to be proprietary know-how or Technology Rights of Nutrasep within the Licensed Field." *Id.* at ¶ 2.4. The TLA then states that Nutrasep "grants to [TOPC Texas] a royalty-bearing, exclusive license to the Licensed Subject Matter. . . ." *Id.* at ¶ 4. In exchange for the grant of rights in the technology, TOPC Texas agreed to pay Nutrasep a nonrefundable license fee of $350,000, plus an "annual license reissue fee" of $25,000 per year through February 2024, plus a 30% gross sales royalty on any product produced with the technology, provided that the minimum annual royalty payment is $125,000. In summary, the TLA provides that Nutrasep is to deliver to TOPC Texas certain proprietary technology and know-how, and in exchange TOPC Texas agreed to pay Nutrasep $350,000 up front, plus $150,000 per year for 20 years.

Defendants respond to Nutrasep's motion by asserting that there are material fact issues which preclude summary judgment on Nutrasep's breach of contract claim. The Court agrees. The evidence before the Court shows that there are fact issues as to whether Nutrasep performed under the contracts as promised. Specifically, Defendants have provided the Court with evidence that Nutrasep failed to provide the Defendants with the "technology" promised under the Agreements.

Defendants contend that the only thing that Nutrasep provided was standard, off-the-shelf, food-processing equipment that was readily available from a number of equipment vendors. They also contend that they received no "know-how" or "inventions" which aided them in the production of commercially saleable lecithin. Defendants have further provided the Court with evidence that the lecithin produced from Nutrasep's equipment was not up to industry standards and was not commercially saleable as promised. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195, 196 (Tex. 2004) (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994)). Because there are fact questions regarding whether Nutrasep failed to perform its obligations under the TLA, thereby excusing Defendant's failure to make payments under the TLA, summary judgment is not appropriate on Nutrasep's breach of contract claims.[8] Therefore, Nutrasep's Motion for Partial Summary Judgment with regard to these claims should be denied.[9]

---

[8] As indicated *supra* at n. 6, all of the breach claims are dependent upon the claim that TOPC Texas failed to make payments due under the TLA.

[9] Defendants further argue that their breach of fiduciary duty defense also precludes summary judgment on Nutrasep's breach of contract claim. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment at 19-20; *see also* Defendants' Amended Joint Answer to Plaintiff's Third Amended Complaint (Clerk's Doc. No. 54) at 11 (affirmative defense number 5). In this argument, Defendants contend that contracts procured by a fiduciary are voidable for unfairness or fraud, and that Guillette was a fiduciary of TOPC Texas. Nutrasep and Guillette assert that there is no summary judgment evidence to support the claim that Guillette was a fiduciary of the Defendants. *See* Nutrasep's Reply to Defendants' Brief (Clerk's Doc. No. 64) at 8-9. Because the fact questions on the issue of Nutrasep's performance preclude summary judgment, the Court does not reach the issue of whether Guillette was a fiduciary of TOPC, or whether there are material facts issues on that question.

### B.     Defendants' Fraud Defense and Counterclaims

Defendants have alleged a fraud defense and counterclaim, claiming that Guillette, in his capacity of General Manager of Nutrasep, approached TOPC and convinced it to enter into the above-agreements by making false representations that Nutrasep had invented new and unique technology for extracting high-grade lecithin from wet gums. Defendants contend that Guillette repeatedly represented to Defendants that they would not have to invest any money in the lecithin project because Nutrasep would be compensated for its alleged technology from wet gums and other projects contributed to Defendants, profits from future lecithin sales and the proceeds from the grant obtained from the USDA. Based on Guillette's representations, Defendants contend that they decided to go forward with the project and sign the contracts at issue in this case despite specific provisions in those contracts requiring Defendants to pay a $350,000 one-time license fee and 20 yearly payments of at least $150,000. Defendants further allege that Guillette attempted to deceive the USDA by submitting a false request for reimbursement to the USDA.

Under Texas law, fraud requires "a material representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Armstrong v. American Home Shield Corp.*, 333 F.3d 566, 570 (5th Cir. 2003) (quoting *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

Nutrasep and Third Party Defendant Russell Guillette now move to dismiss Defendants' fraud counterclaims on the basis that (1) such claims fail to satisfy the requirements of Federal Rule of Civil Procedure 9(b); (2) the contractual disclaimers of reliance preclude such claims; (3) Defendants lack standing to assert any claim on behalf of the USDA; and (4) Defendants have suffered no damages

as a result of Nutrasep and Guillette's actions. The Court will address each of these arguments separately.

### 1. FED. R. CIV. P. 9(b)

Nutrasep first argues that Defendants' fraud claim should be dismissed because it fails to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirements because Defendants have failed to allege specific facts implicating Nutrasep or Guillette. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). The Court finds that Defendants' Amended Answer sufficiently identifies the "who, what, when, where, and how" of the alleged fraud and thus complies with Rule 9(b)'s particularity requirements. Accordingly, Nutrasep's Motion with regard to this argument should be denied.

### 2. Merger Clauses

As already noted, a fraud claim under Texas law requires that the false representation was relied upon by the plaintiff. Nutrasep argues that the merger clauses in this case preclude Defendants from establishing the "reliance" element of their fraud claims. The Agreements at issue in this case contain the following merger clauses and disclaimers of reliance:

<u>The Technology and Licensing Agreement</u>

> 3.3 Licensee, by execution hereof, acknowledges, covenants and agrees that it has not been induced in any way by NTS or its employees to enter into this Agreement, and further warrants and represents that (i) it has conducted sufficient due diligence with respect to all items and issues pertaining to this Article 3 and all other matters

pertaining to this Agreement; and (ii) Licensee has adequate knowledge and expertise, or has utilized knowledgeable and expert consultants, to adequately conduct the due diligence, and agrees to accept all risks inherent herein.

***

12.1 This Agreement constitutes the entire and only agreement between the parties for Licensed Subject Matter and all other prior negotiations, representations, agreements, and understandings are superceded hereby. No agreements altering or supplementing the terms hereof may be made except by a written document signed by both parties.

Ex. 11 to Nutrasep's MSJ at ¶¶ 3.3 and 12.1.

<u>The Secured Promissory Note</u>

THE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE HOLDER SHALL BE DETERMINED SOLELY FROM THIS NOTE AND THE RELATED SECURITY AGREEMENT, AND ANY OTHER AGREEMENTS BETWEEN THE MAKER AND THE HOLDER ARE SUPERSEDED BY AND MERGED INTO SUCH WRITINGS. THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE MAKER AND HOLDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Ex. 12 to Nutrasep's MSJ at p. 2.

<u>The Manufacturing Supply Agreement</u>

10.4 Supplier, by execution hereof, acknowledges, covenants, and agrees that it has not been induced in any way by NTS to enter into this Agreement, and further warrants and represents that (i) it has conducted sufficient due diligence with respect to all items and issues pertaining to this Article 10, and all other matters pertaining to this Agreement; and (ii) Supplier has adequate knowledge and expertise, or has utilized knowledgeable and expert consultants, to adequately conduct due diligence with respect to all items and issues pertaining to this Article 10 and all other matters pertaining to this Agreement.

***

15(b) Entire Agreement. This Agreement and its Exhibits A (Product Specifications and Pricing), B (Teaming Agreement), C (Confidentiality Agreement), D (Technology License Agreement) attached hereto, contain the entire agreement of the parties regarding the subject matter contained herein and supersedes any and all prior

agreements, understandings, promises and representations made by either party covering or relating to the subject matter.

Ex. 14 to Nutrasep's MSJ at ¶¶ 10.4 and 15(b).

Relying on *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997), Nutrasep argues that these contractual provisions preclude Defendants' fraud claims in this case. In *Schlumberger*, the parties had entered into a joint venture to mine diamonds from the ocean floor off the South African coast. *Id.* at 173. After the parties became embroiled in a dispute regarding the feasibility and value of the project, the parties negotiated a buy-out of the Swansons' interest in the mining project. *Id.* at 174. According to the Swansons, during their negotiations, Schlumberger represented to them that the project was neither technologically feasible nor commercially viable, refused to give them any information or data supporting these representations, and disputed the validity of the Swansons' rights and interests in the project. *Id.* As part of the negotiated buy-out, the Swansons released Schlumberger from all causes of action, known or unknown, and specifically agreed that they were not relying on any statements or representations of Schlumberger, were relying on their own judgment, and had been represented by counsel, who had explained the entire contents and legal consequences of the release. *Id.* After Schlumberger subsequently sold its interest in the sea diamond mining project for a profit, the Swansons sued Schlumberger for fraudulently inducing them to sell their interest at an undervalued price. *Id.*

The Texas Supreme Court held that the contractual disclaimer of reliance clause was binding on the parties and precluded the Swansons' fraudulent inducement claim. *Id.* at 177. The court declared that "[t]he contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Id.* at 179. The court held that "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *Id.*

at 181. However, the court emphasized that a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim. *Id.* The court was careful to point out that its holding was specifically based on the facts presented in the case before it. *Id.* In holding that the contractual release was binding on the parties and precluded the Swansons' fraudulent inducement claim, the *Schlumberger* court found it significant that the negotiating parties were represented by "highly competent and able legal counsel," were experts in the subject matter of the negotiations, were bargaining at arms length, the sole purpose of the release was to end the dispute "once and for all" and to terminate their business relationship, and the terms of the release "in clear language . . . unequivocally disclaimed reliance" on the specific representations of the value of the project that were the basis for the Swansons' lawsuit. *Id.* at 179-180. Courts have interpreted the *Schlumberger* decision to mean that unless the above-factors are present, a merger or disclaimer clause will not bar a fraudulent inducement claim. *See e.g., Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.,* 134 S.W.3d 385, 394 (Tex. App.– Houston (1st Dist.) 2004, pet. granted, cause dism'd) (distinguishing *Schlumberger* and holding that disclaimer did not bar fraudulent inducement claim where parties did not enter into the agreement containing the disclaimer to resolve an ongoing dispute and party was not represented by counsel); *John v. Marshall Health Services, Inc.,* 91 S.W.3d 446, 450 (Tex. App.– Texarkana 2002, pet. denied) (distinguishing *Schlumberger* and holding that merger clause did not bar fraudulent inducement claim where disclaimer was boilerplate contract language, party was not represented by counsel, and contract was at the beginning and not the end of the parties' relationship); *Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.– Waco 2000, pet. denied) (holding that release did not bar fraudulent inducement claim against party who was not represented by counsel and was not a sophisticated business player).

Unlike *Schlumberger*, the Parties in the instant case were not entering into the Agreements containing the merger and disclaimer clauses to resolve an ongoing dispute. The Parties entered into the Agreements in order to create a business relationship, not end an existing one. Thus, when compared to *Schlumberger*, the disclaimer clauses in this case are "not an important part of the basis of the bargain." See *Carousel's Creamery, L.L.C.*, 134 S.W.3d at 394. Moreover, the disclaimers in this case are standard boiler-plate provisions that do not clearly and unequivocally disclaim reliance on the specific representations that form the basis for Defendants' fraud claims. In addition, Defendants assert and have provided the Court with summary judgment evidence that they were not represented by legal counsel during the negotiations and execution of the Agreements at issue in this case. *See* John Knoerr Aff. at Ex. 1 to Defendants' Response; Kevin Johnson Aff. at Ex. 4 to Defendants' Response.[10] Based on these circumstances, the Court finds that the facts are in dispute regarding these matters, and the Agreements do not reflect the "requisite clear and unequivocal expression of intent necessary to disclaim reliance on [the] specific representations" by Nutrasep. Accordingly, Defendants' fraud counterclaims are not barred by the contractual disclaimers in this case. *Schlumberger*, 959 S.W.2d at 179. Because the Court finds that there are material fact issue with regard to Defendants' counterclaims, summary judgment is inappropriate at this stage of the proceedings.

This, of course, does not mean that the reliance issue is settled by this recommendation, nor that the merger clauses will not be admissible at any trial on these issues. Indeed, given the language of the various clauses, a jury may well find Defendants' professions of reliance on Guillette's statements lacking in credibility. This, however, is ultimately a question for a jury, not the Court.

---

[10] Although Nutrasep questions Defendants' veracity with this regard, there is no evidence before the Court showing that Defendants were represented by counsel during the negotiations and execution of the Agreements at issue.

### 3.     Standing

Nutrasep and Guillette argue that Defendants lack standing to assert a fraud claim on behalf of the USDA. Defendants have not responded to this argument and thus have failed to demonstrate that there is a genuine issue of material fact for trial with regard to this claim. Accordingly, to the extent this claim is being made in the counterclaim, it must be dismissed.

### 4.     Damages

Lastly, Nutrasep and Guillette argue that Defendants' fraud claims fail because Mr. Guillette's actions have caused no damages to Nutrasep. Defendants dispute this contention and aver that they have incurred over $100,000 of out-of-pocket losses as a direct result of Mr. Guillette's alleged misrepresentations in this case. The Court finds that Defendants have presented sufficient facts to create a genuine issue of material fact with regard to the issue of damages and therefore summary judgment is inappropriate.

## C.     Summary

The Court finds that there are material fact issues with regard to Nutrasep's breach of contract claim which preclude the entry of summary judgment on this claim. The Court also finds that Defendants' fraud counterclaims are not barred by the contractual disclaimers as a matter of law and therefore those claims should not be dismissed at this time. Lastly, the Court finds that any fraud claim asserted by Defendants *on behalf of the USDA* should be dismissed for lack of standing.

## IV.  RECOMMENDATION

The Magistrate Court RECOMMENDS that the District Court GRANT IN PART and DENY IN PART Nutrasep and Guillette's Motions for Summary Judgment (Clerk's Doc. Nos. 52 & 58). The Magistrate Court RECOMMENDS that the District Court GRANT the Motions for Summary

Judgment only with regard to Defendants' fraud counterclaim asserted *on behalf of the USDA*, but DENY the Motions with regard to all other claims and counterclaims.

## V.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 27th day of October, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE